UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CANAM STEEL CORPORATION,                    No. 2:09-cv-00672-MCE-KJM

      Plaintiff,

  v.                                        MEMORANDUM AND ORDER

JOHN MAYO, et al.,

      Defendants.

----oo0oo----

Plaintiff Canam Steel ("Plaintiff") initiated this action against Defendants John Mayo ("Mayo"), Cadela Steel, Inc. ("Cadela"), JD2, Inc. ("JD2"), and The Spectrus Group, Inc. ("Spectrus"). Plaintiff seeks relief both directly on its own behalf and derivatively on behalf of JD2. Presently before the Court are two Motions to Dismiss filed by Defendants challenging Plaintiff's Third through Sixth Causes of Action. For the following reasons, Defendants' Motions are granted in part and denied in part.[1]

///

---

[1] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefing. E.D. Cal. Local Rule 78-230(h).

1

## BACKGROUND[2]

In 1993, Mayo formed JD2, a closely-held corporation, to compete in the steel manufacturing and construction industry. In January of 2002, Mayo approached Plaintiff, a supplier of steel products, regarding investing in JD2. Mayo made certain financial and informational disclosures to Plaintiff, and the parties entered into two written agreements, a Stock Purchase Agreement and an Incorporated Stockholders Agreement ("Stockholders Agreement").

Pursuant to these agreements, and in reliance on further disclosures of financial and other information, Plaintiff invested a total of $2.85 million in JD2, becoming holder of twenty-five percent of the outstanding shares of JD2 common stock, which, as of December 2007, was worth approximately $10 million. Mayo owns the remaining seventy-five percent of the outstanding common stock shares.

Pursuant to the Stockholders Agreement, the JD2 shareholders elected one director to the Board and Mayo appointed the remaining directors.

Mayo subsequently formed Spectrus to pursue business opportunities concerning certain proprietary technology. Spectrus eventually became a wholly-owned subsidiary of JD2.

From the time the Directors were first elected to the Board, until December of 2007, the Board held only one meeting, in approximately February 2005.

---

[2] The following facts are derived from Plaintiff's Complaint.

According to Plaintiff, after that meeting, to the exclusion of Plaintiff, Mayo alone began to control the corporation. Moreover, Plaintiff alleges that Mayo failed to adhere to corporate formalities by, for example, failing to convene an annual shareholders' meeting. Mayo also allegedly failed to conduct JD2's business and financial affairs with the requisite transparency.

Plaintiff further alleges that Mayo breached contractual obligations to Plaintiff by: 1) failing to call meetings of the Board and instead directing all financial and business matters independently; 2) failing to call any shareholders' meetings and making decisions pertaining to compensation and dividends without shareholder input; 3) failing to prepare and obtain approval of annual budgets; 4) failing to obtain unanimous written consent of shareholders despite contractual requirements; and 5) failing to provide audited financial statements.

Plaintiff also contends that Mayo engaged in "gross mismanagement and self-dealing" by: 1) paying himself and other officers excessive compensation; 2) improperly sharing equipment, office space, and personnel with, as well as improperly loaning funds to, Cadela, a recently formed business that Mayo established as a steel fabrication concern; 3) improperly leasing property from an entity owned in equal shares by Mayo and another JD2 officer; 4) arranging to loan funds from JD2 to himself for the purchase of vacation property; and 5) using JD2 funds for personal items and expenses, such as the purchase of two vehicles.

///

Finally, Plaintiff alleges that by, *inter alia*, failing to obtain letters of credit, guarantees, and other security, JD2 so mismanaged its involvement in one project that it is now owed approximately $4.3 million in uncollectible accounts receivables.

Accordingly, on March 11, 2009, Plaintiff filed the instant action asserting Breach of the Stock Purchase Agreement, Breach of Fiduciary Duty, and requesting establishment of a Constructive or Resulting Trust, an Accounting, and Equitable Relief for Shareholder Oppression.  Plaintiff brings each cause of action on its own behalf and also brings its Third, Fourth, and Fifth Claims derivatively on behalf of JD2.  Defendants have now, via two separate Motions, moved to dismiss Plaintiff's final four causes of action.

**STANDARD**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the...claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

///

///

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Id. at 1964-65 (internal citations and quotations omitted). Factual allegations must be enough to raise a right to relief above the speculative level. Id. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) ("The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. A court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment...." Fed. R. Civ. P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962). Generally, leave to amend is denied only when it is clear the deficiencies of the complaint cannot be cured by amendment. DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).

///

///

///

///

///

///

**ANALYSIS**

**1.   Claims Against Spectrus**

First, Spectrus asserts that Plaintiff has failed to state any claim against Spectrus because Plaintiff has not factually alleged that Spectrus engaged in any wrong-doing, nor has Plaintiff adequately alleged any alternate form of indirect liability.  Indeed, Plaintiff's allegations regarding Spectrus are limited to its contentions that: 1) "Plaintiff is informed and believes, and thereon alleges, that each defendant named in this complaint is in some manner responsible for the wrongs and damages alleged below, and in so acting, was functioning, at least at times, as the agent, servant, partner, alter ego and/or employee of one or more of the other defendants, and in doing and/or not doing the actions mentioned below was acting within the course and scope of his or her or its authority as such agent, servant, partner, and/or employee with the permission and consent of one or more of the other defendants," and 2) sometime after January of 2002, Defendant "Mayo formed the Spectrus Group for the purpose of leveraging certain proprietary technology, which entity became a wholly-owned subsidiary of JD2." Complaint, ¶¶ 10, 15.

Under federal pleading rules, these allegations are simply inadequate to state a claim because Plaintiff has alleged no facts indicating that Spectrus was directly responsible for any wrong-doing or that Spectrus was acting as agent or alter-ego of another Defendant against whom allegations were properly made.

///

See Nordberg v. Trilegiant Corp., 445 F. Supp. 2d 1082, 1102 (N.D. Cal. 2006) ("routine control by a parent is insufficient to support the contention that a subsidiary is a mere instrumentality."). Accordingly, Spectrus' Motion to Dismiss Plaintiff's Third through Sixth Causes of Action is granted with leave to amend, and the following discussion pertains only to the remaining Defendants.

### 2. Plaintiff's Third, Fourth, and Fifth Causes of Action

Plaintiff initiated the instant litigation as both a direct and a derivative action, and Defendants challenge Plaintiff's standing to bring those instant claims directly. In California, "[a] shareholder does not have standing to sue in an individual capacity for injury to the corporation." In re Autodesk, Inc., Shareholder Derivative Litigation, 2008 WL 5234264, *4 (N.D. Cal.). Indeed, "[u]nder California law, a shareholder *cannot* bring a direct action for damages against management on the theory their alleged wrongdoing decreased the value of his or her stock (e.g., by reducing corporate assets and net worth). The corporation itself must bring such an action, or a derivative suit may be brought on the corporation's behalf. A different rule would authorize multitudinous litigation and ignore the corporate entity." Schuster v. Gardner, 127 Cal. App. 4th 305, 313 (4th Dist. 2005) (emphasis in original) (internal citations and quotations omitted).

///

///

Plaintiff made no argument in opposition to Defendants' Motion to Dismiss its direct claims, instead asserting only that it had standing to bring this suit derivatively. Accordingly, in light of both the applicable law and Plaintiff's lack of opposition, Defendants' Motion to Dismiss is granted as to Plaintiff's Third, Fourth, and Fifth Causes of Action to the extent the claims are premised on direct injury to Plaintiff.

Defendants next challenge Plaintiff's derivative claims arguing that Plaintiff failed to make a proper demand on the Board of Directors or to allege the futility of taking such action. Plaintiff concedes it did not make any demand upon the Board and instead argues that the making of a demand would have been an exercise in futility.

Pursuant to Federal Rule of Civil Procedure 23.1, "The complaint must be verified and must...state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." In California, "[t]he test for proving demand futility is whether the facts show a reasonable doubt that (1) the directors are disinterested and independent, and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment."

///
///
///
///
///

<u>Oakland Raiders v. National Football League</u>, 93 Cal. App. 4th, 572, 587 (6th Dist. 2001), citing <u>Aronson v. Lewis</u>, 473 A.2d 805, 814 (Del. 1984).[3]

Under the first prong of the above test, "[t]he proof must be of 'facts specific to each director from which [the trier of fact] can [find a reasonable doubt] that that particular director could or could not be expected to fairly evaluate the claims of the shareholder plaintiff.'" <u>Oakland Raiders</u>, 93 Cal. App. 4th at 587, quoting <u>Shields v. Singleton</u>, 15 Cal. App. 4th 459, 1622 (2d Dist. 1993). Plaintiffs here have alleged numerous facts indicating that Defendant Mayo engaged in self-dealing, utterly failed to adhere to the requisite corporate formalities, and exercised sole dominion over the corporation. See Reed v. Norman, 152 Cal. App. 2d 892, 899 (2d Dist. 1957). Plaintiff also alleged that the remaining Board members ignored their corporate duties by failing to convene meetings of the directors and by failing to monitor the actions of Defendant Mayo. Thus, Plaintiff has essentially alleged wrong-doing on the part of each individual director. Accordingly, Plaintiff has sufficiently pled with the requisite particularity that each individual director is, in some manner, interested in the instant litigation such that demand would be futile.

---

[3] The California courts looked to Delaware law in articulating the instant test. This Court is aware that there is some confusion as to whether the California test is disjunctive or conjunctive. Wixon v. Wyndam Resort Develop. Co., 2008 WL 4821483, *2 (N.D. Cal.). However, resolution of that issue is not required in this case because Plaintiff's claims survive the instant attack on the pleadings under even the more strict standard. Accordingly, the Court will address the test as articulated in <u>Oakland Raiders</u>. <u>See</u> <u>Id</u>.

Additionally, analysis of the second prong also supports a finding of futility.  Pursuant to the Business Judgment Rule, "a director is not liable for a mistake in business judgment which is made in good faith and in what he or she believes to be the best interests of the corporation, where no conflict of interest exists."  Gaillard v. Natomas Co., 208 Cal. App. 3d 1250, 1263 (1st Dist. 1989).  However, "[n]otwithstanding the deference to a director's business judgment, the rule does not immunize a director from liability in the case of his or her abdication of corporate responsibilities: ... 'When courts say that they will not interfere in matters of business judgment, it is presupposed that judgment-reasonable diligence-has in fact been exercised.  A director cannot close his eyes to what is going on about him in the conduct of the business of the corporation and have it said that he is exercising business judgment.  Courts have properly decided to give directors a wide latitude in the management of the affairs of a corporation provided always that judgment, and that means an honest, unbiased judgment, is reasonably exercised by them...'"  Id. at 1263-1264, quoting Burt v. Irvine Co., 237 Cal. App. 2d 828, 852-853 (1965).

According to Plaintiff, the Board convened only once during the period relevant to this dispute.  Furthermore, Mayo allegedly made all corporate decisions and alone conducted corporate business.  Accordingly, this case is not an instance in which the director's decision-making is protected.  Rather, this is a case in which the directors are alleged to have neglected their decision-making duties in their entirety.

///

As such, Plaintiff has sufficiently alleged that the inaction of the majority of the Board was not the product of any affirmative Board decision and, therefore, is not deserving of the protections the Business Judgment Rule was intended to afford. Thus, Plaintiff has adequately pled the futility of making a demand upon the Board, and Defendant's Motion to Dismiss Plaintiff's Third, Fourth, and Fifth derivative Causes of Action is denied.

### 3.    Sixth Cause of Action

Per its Sixth Cause of Action, Plaintiff seeks equitable relief in the form of an order directing Defendants to buy-out Plaintiff's shares in JD2.  However, according to Defendants, California courts have rejected this remedy as a matter of law. Defendants cite to Stuparich v. Harbor Furniture Manufacturing, Inc., 83 Cal. App. 4th 1268, 1279 (2d Dist. 2000), for the proposition that "the court has no authority to compel the majority shareholder(s) to buy out a disgruntled minority shareholder."  Reply of JD2, 2:28-3:1.

Defendants' authority is inapposite.  The Stuparich court did not state that it was without power to issue the requested order.  Rather, when confronted with circumstances under which the court had already determined corporate dissolution was unwarranted, the court simply refused to require compliance with a non-mandatory provision of the California Corporate Code that allowed a majority shareholder to avoid dissolution by buying the shares of a minority owner.  Stuparich, 83 Cal. App. at 1279.

Thus, Defendants' case law does not support the proposition that this Court is without power to structure a remedy involving a buy-out of shares.

Moreover, pursuant to California Corporate Code § 1804, "[a]fter hearing the court may decree a winding up and dissolution of the corporation if cause therefor is shown or, with or without winding up and dissolution, may make such orders and decrees and issue such injunctions in the case as justice and equity require." Accordingly, it is well within this Court's power, under the appropriate circumstances, to order the requested relief. Defendants' Motion to Dismiss Plaintiff's Sixth Cause of Action is therefore denied.

**CONCLUSION**

For the reasons just stated, Defendants' Motions (Docket Nos. 9 and 11) are granted in part and denied in part. Spectrus' Motion to Dismiss is GRANTED with leave to amend. The remaining Defendants' Motions to Dismiss Plaintiff's Third, Fourth, and Fifth Cause of Action is GRANTED with leave to amend as to Plaintiff's direct claims and DENIED as to Plaintiff's derivative claims. Finally, the remaining Defendants' Motions to Dismiss Plaintiff's Sixth Cause of Action is DENIED.

///
///
///
///
///

Plaintiff may (but is not required to) file an amended complaint, not later than twenty (20) days after the date this Memorandum and Order is filed electronically. Nevertheless, if no amended complaint is filed within said twenty (20)-day period, without further notice, those causes of action hereby dismissed will be deemed to have been dismissed with prejudice.

IT IS SO ORDERED.

Dated: May 22, 2009

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

13